■ JOEL BOYARSKY, Appellant, v JAMES FROCCARO et al., Respondents. (Action No. 1.) JOEL BOYARSKY, Appellant, v JAMES FROCCARO et al., Respondents. (Action No. 2.)—In an action for a judgment declaring that the plaintiff has the sole right, title and interest to a parcel of real property pursuant to a contract executed by the parties (action No. 1), the plaintiff appeals from an order of the Supreme Court, Nassau

County (Becker, J.), dated July 3, 1985, which denied his motion for summary judgment, and in an action seeking indemnification for the payment of real estate taxes and other operating expenses of the subject property pursuant to the same contract (action No. 2), the plaintiff appeals from an order of the same court, dated February 7, 1986, as, upon granting the defendants' motion for reargument of a decision of the same court, dated July 3, 1985, vacated its prior determination granting the plaintiff's motion for summary judgment, and denied the plaintiff's motion for summary judgment.

Ordered that the order dated July 3, 1985, is affirmed; and it is further,

Ordered that the order dated February 7, 1986, is reversed, on the law, the plaintiff's motion is granted, the plaintiff is awarded judgment in the principal amount of $255,328.16, and the matter is remitted to the Supreme Court, Nassau County, for the entry of an appropriate judgment; and it is further,

Ordered that the plaintiff is awarded one bill of costs.

In 1981, the defendants James Froccaro and Anthony Scotto contracted to buy a 40-acre parcel of undeveloped land in the Village of Port Washington for $1,100,000. When their bank withdrew a mortgage commitment, Froccaro and Scotto entered into "a financial agreement to purchase said property" with the plaintiff, Joel Boyarsky, who provided the remaining funds. A partnership, the defendant Dallas Realty Company, was subsequently formed, consisting of two partners—the plaintiff Joel Boyarsky (representing a group of investors), and Michael Lester, a defendant in action No. 1, the attorney for both parties, who acted as "nominee" of Froccaro and Scotto. It was agreed that Dallas Realty Company would take title to the subject property.

The agreement provided, *inter alia*, that if the property were resold, Boyarsky was to receive the first $1,600,000; the next $800,000, if the sales price was over $1,600,000 and up to $2,400,000, was to go to the defendants Froccaro and Scotto; and any excess over $2,400,000 was to be distributed 75% to Froccaro and Scotto and 25% to Boyarsky. In the event the property was not resold within 24 months from the date Dallas Realty Company (hereinafter Dallas) acquired title to the subject property, then Froccaro and Scotto were obligated to forfeit all their right, title and interest in the property to Boyarsky. The defendants were given an option to purchase Boyarsky's interest in the property for the sum of $1,600,000

within the 24-month period. Froccaro and Scotto were given the exclusive right to sell the property provided that Boyarsky received the first $1,600,000 within the 24-month period and were obligated to pay all costs incidental to the maintenance of the property, including real estate taxes, and to hold Boyarsky harmless with respect to those items.

The property was not sold within the 24-month period provided in the agreement, because an anticipated zoning change could not be obtained, nor did the defendants exercise their option to purchase Boyarsky's interest in the property for $1,600,000. Moreover, Froccaro and Scotto failed to pay real estate taxes on the property, which resulted in a $200,000 assessment and the scheduling of a tax lien sale. Upon the expiration of their rights under the original agreement, Froccaro and Scotto entered into two modified agreements with Boyarsky, which, *inter alia,* extended the terms of the original agreement. Boyarsky then instituted action No. 1, alleging that he was entitled to all right, title and interest in the subject property because the defendants had not complied with the agreement. Boyarsky also instituted action No. 2, seeking indemnification for the taxes and expenses which he had paid in order to avoid the tax lien sale.

The plaintiff argues that the agreement between the parties constitutes a partnership agreement and that the purchase was undertaken as a joint venture for the purpose of purchasing and reselling the property at a profit. The defendants allege that the transaction in question was actually a usurious mortgage loan, and that the writings between the parties were deliberately created by the plaintiff to camouflage the true nature of the transaction.

When determining whether a partnership (or a joint venture) exists, "the factors to be considered are the intent of the parties (express or implied), whether there was joint control and management of the business, whether there was a sharing of the profits as well as a sharing of the losses, and whether there was a combination of property, skill, or knowledge" *(Ramirez v Goldberg,* 82 AD2d 850, 852; *see, Yonofsky v Wernick,* 362 F Supp 1005, 1030-1035). While it is true that a sharing of the profits generally constitutes prima facie evidence of the existence of a partnership *(see,* Partnership Law § 11), the fact that an individual is to receive a share of the profits is not dispositive, since all of the elements of the relationship must be considered *(see, Ramirez v Goldberg, supra; Moscatelli v Nordstrom,* 40 AD2d 903). When a question is presented as to whether or not parties have entered into a

partnership, "the court must look at the contract as explained by * * * transactions and statements, and ascertain whether it was their intention to become partners, if the intention cannot be conclusively drawn from the terms of the contract which they have made" *(Heye v Tilford,* 2 App Div 346, 350-351, *affd* 154 NY 757). Where a question of intention is determinable from the written agreement, the question is one of law, appropriately decided on a motion for summary judgment *(see, Mallad Constr. Corp. v County Fed. Sav. & Loan Assn.,* 32 NY2d 285). However, where the intent must be determined by disputed evidence or inferences outside the written words of the instrument, a question of fact is presented which warrants the denial of summary judgment.

The court properly denied the plaintiff's motion for summary judgment in action No. 1. The defendant Scotto's affidavit raises questions of fact regarding the preliminary negotiations between the parties, which go directly to the issue of intent. Scotto's recitation was based on firsthand knowledge, since he was a direct participant in all of the discussions and events underlying the transaction, and his allegations cannot be dismissed as merely conclusory or speculative *(see, Torelli v Esposito,* 63 NY2d 903). Moreover, as noted by Justice Eli Wager in a previous memorandum decision in this case *(see, Boyarsky v Froccaro,* 125 Misc 2d 352, 361): "Nevertheless, precisely because forfeitures are involved and the law abhors a forfeiture, it is the duty of the court to interpret the agreement strictly in order to avoid such a result *(Lyon v Hersey,* 103 NY 264). Thus, the defendants should have an opportunity to * * * show, if they can, that the intent of the parties was as they allege. It is the substance rather than the form of a transaction which controls and the basic issue is intent".

With respect to the plaintiff's motion for summary judgment in action No. 2, the court should not have vacated its prior determination and denied the motion. If the parties' transaction is determined to have been a usurious mortgage loan, the underlying written agreements must be declared void and unenforceable *(see, Szerdahelyi v Harris,* 67 NY2d 42). However, under such circumstances it is apparent that, notwithstanding the alleged usurious loan agreement, the defendants' obligation to pay all real estate taxes and other operating expenses was undertaken by virtue of their status as property owners, and they cannot claim that the preexisting obligations, which they have not paid or in any way satisfied or discharged, should not be enforced against them

*(see, Booth v Landau,* 103 AD2d 733, *appeal dismissed* 63 NY2d 764; *Pisano v Rand,* 30 AD2d 173). Moreover, should the trier of fact find the agreement between the parties to be a valid partnership agreement, it is clear that the defendants would be liable for the payment of such taxes and expenses pursuant to the terms of the agreement. Accordingly, judgment should be entered in action No. 2 in the principal amount of $255,328.16 in favor of the plaintiff.

We have reviewed the parties' remaining contentions and find them to be without merit. Thompson, J. P., Brown, Niehoff and Spatt, JJ., concur. *[See,* 125 Misc 2d 352.]